UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JUDITH A. BURGESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17 CV 2316 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Judith A. Burgess brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Burgess' severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I. Procedural History**

Burgess filed her applications for DIB and SSI on March 3, 2014, claiming that she became

unable to work on August 3, 2012, because of fibromyalgia, COPD, post-mastectomy syndrome, depression, bipolar, back pain, scoliosis, lymphedema, and thoracic radiculitis with neuralgia. (Tr. 153-63, 183.) Burgess was 51 years of age at the time of her alleged onset of disability. Her claims were denied initially. (Tr. 95-100.) Following an administrative hearing, Burgess' claims were denied in a written opinion by an ALJ, dated May 31, 2016. (Tr. 12-22.) Burgess then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on July 10, 2017. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Burgess first argues that the ALJ "failed to properly consider Step 2." (Doc. 17 at 3.) She next contends that the ALJ "failed to properly consider RFC." *Id.* at 9.

## II. The ALJ's Determination

The ALJ first found that Burgess met the insured status requirements of the Social Security Act through December 31, 2014. (Tr. 14.) He further found that Burgess has not engaged in substantial gainful activity since August 3, 2012, the alleged onset date. *Id.* In addition, the ALJ concluded that Burgess had the following severe impairments: chronic pulmonary insufficiency, spine disorder, fibromyalgia, affective disorder, and anxiety disorder. *Id.* The ALJ found that Burgess did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Burgess's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she should never be required to climb a ladder,

> rope or scaffold. She can only occasionally climb a ramp or stairs, stoop, kneel, crouch and crawl. She is limited to simple, routine, repetitive tasks in a low-stress environment, defined as having only occasional judgment and decision-making requirements, with only occasional changes in the work setting. In addition, this person can only tolerate occasional interaction with supervisors, co-workers and the public.

(Tr. 16-17.)

The ALJ found that Burgess was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as routing clerk, linen supply load builder, and palletizer. (Tr. 20-21.) The ALJ therefore concluded that Burgess was not under a disability, as defined in the Social Security Act, from August 3, 2012, through the date of the decision. (Tr. 21.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on March 3, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on March 4, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 22.)

### III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a

preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's

physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a

medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §416.920(a)(4)(v).  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the

claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.  *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).  The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace.  *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).  Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.  *See id.*  Next, the Commissioner must determine the severity of the impairment based on those ratings.  *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.  *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).  The Commissioner makes this determination by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.  *See id.*  If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

### IV.  Discussion

**A.  Step Two Determination**

Burgess first argues that the ALJ should have found her diagnoses of breast cancer,

post-mastectomy pain syndrome, and chronic pain syndrome were severe impairments. Defendant contends that any error in failing to discuss these diagnoses at step two was harmless.

As an initial matter, the undersigned notes that Burgess did not allege breast cancer or chronic pain syndrome as medical conditions limiting her ability to work in her application for benefits. (Tr. 183.) It is Burgess' burden to prove the existence of severe impairments. *See Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("It is the claimant's burden to establish that his impairment or combination of impairments are severe."). Burgess' omission of these impairments in her application is significant. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to "allege depression in [an] application for disability benefits is significant, even if the evidence of depression was later developed").

Burgess did include post-mastectomy syndrome in her application. (Tr. 183.) A review of the medical record reveals the following evidence relevant to Burgess' breast cancer, mastectomy, and post-mastectomy pain complaints:

Burgess was diagnosed with left breast cancer in August 2012. (Tr. 248, 264.) On October 17, 2012, she underwent simple bilateral mastectomy performed by breast surgeon Aislinn Vaughan, M.D., with immediate reconstruction with tissue expanders performed by plastic surgeon Terence Myckatyn, M.D. (Tr. 260-2). On November 7, 2012, Burgess' oncologist indicated that her final pathology was consistent with low grade 4 millimeter tubular carcinoma. (Tr. 306.) Apart from pain at the surgical site, Burgess had no other issues, and was noted to be undergoing reconstruction. *Id.* On November 26, 2012, Dr. Myckatyn found that Burgess was doing "extremely well" following breast reconstruction surgery. (Tr. 276.) Burgess subsequently underwent bilateral breast implant exchange (expanders to permanent implants) performed by Dr. Myckatyn. (Tr. 1268.)

Burgess saw Priya Sadhu, M.D. for "routine care" on January 21, 2013, at which time she complained of worsening back pain. (Tr. 386.) Dr. Sadhu noted that she had referred Burgess to pain management approximately one year prior for back pain but Burgess had just recently made an appointment with Ramis Gheith, M.D. at Interventional Pain Institute. *Id.* Dr. Sadhu did not note any pain complaints related to Burgess' mastectomy and reconstruction surgery. *Id.*

Burgess presented to Dr. Gheith on February 11, 2013, with complaints of chronic thoracic pain for ten years. (Tr. 471.) Dr. Gheith noted that Burgess' back pain did not worsen following her mastectomy. *Id.* Dr. Gheith diagnosed Burgess with chronic thoracic wall posterior pain with thoracic radiculitis and intercostal neuralgia at T9-T12; clinical evidence of fibromyalgia with cervical lumbar facet mediated pain syndromes; bilateral intercostobrachial neuralgia from post-mastectomy pain syndrome; and chronic pain syndrome. (Tr. 476.) He recommended physical therapy. *Id.* Dr. Gheith also prescribed Lyrica[1] for Burgess' fibromyalgia and post-mastectomy pain syndrome. *Id.*

On March 13, 2013, Burgess saw Jamshed Agha, M.D. at SSM Cancer Care. (Tr. 319.) Dr. Agha noted that Burgess was doing well overall, had a history of fibromyalgia, and was taking Arimidex.[2] *Id.* Dr. Agha noted joint pain (arthralgia) was a common side effect of Arimidex. (Tr. 321.) Dr. Agha stopped Arimidex, but indicated in August 2013 that Burgess experienced no improvement, so restarted the Arimidex. (Tr. 323.) In December 2013, Burgess continued to complain of "generalized pains, especially in her back" she attributed to fibromyalgia, as well as some "stiffness and aching to the upper parts of her chest where her

---

[1]Lyrica is indicated for the treatment of pain in people with fibromyalgia. *See* WebMD, http://www.webmd.com/drugs (last visited September 7, 2018).
[2]Arimidex is indicated for the treatment of breast cancer in women after menopause. *See* WebMD, http://www.webmd.com/drugs (last visited September 7, 2018).

surgeries were." (Tr. 329.)

In June and July of 2015, Burgess saw a nurse practitioner at Mercy Services Clayton for various complaints, including pain and tenderness to the chest wall. (Tr. 915, 921.) Tenderness with palpation was noted on examination. *Id.*

In September 2015, Burgess presented to Dr. Gheith with complaints of severe pain around the bra line since her mastectomy. (Tr. 741-45.) Burgess underwent x-rays and an MRI of the thoracic spine, which revealed evidence of degenerative changes in the thoracic (upper), as well as the mid and lower cervical region; Dr. Gheith opined that the thoracic degeneration was the most likely cause of Burgess' pain. (Tr. 741, 744.)

On October 20, 2015, Burgess presented to Dr. Myckatyn with complaints of pain and swelling in the right breast. (Tr. 1268.) Dr. Myckatyn stated that her imaging shows that there were no problems with the device. (Tr. 1267.) He stated that the "bottom line is she has very large devices in position which she likes because of their appearance," yet because of the weight of the implants, she has problems such as tension and pressure when she lies flat on her back. *Id.* Dr. Myckatyn recommended downsizing the implants, but Burgess did not want smaller implants. *Id.*

The above summary of the medical evidence reveals that Burgess' breast cancer was treated successfully with a mastectomy in October 2012. The medical record does indicate that Burgess occasionally complained of chest pain that she attributed to her mastectomy and reconstruction surgeries. Diagnoses of post-mastectomy pain syndrome and chronic pain syndrome are included in the record. It is true that the ALJ should have discussed these diagnoses at step two.

Defendant's position is that even if the ALJ had found Burgess' cancer, post-mastectomy

pain syndrome, and chronic pain syndrome to be severe, the outcome of the case would not have changed. The undersigned agrees.

Although Dr. Gheith assessed post-mastectomy pain syndrome on Burgess' initial visit in February 2013 (Tr. 476), he did not include this diagnosis in future visits (Tr. 480, 739, 742, 745, 748, 753, 762). Notably, at her February 2013 visit, Burgess reported experiencing chronic thoracic pain for ten years that was not affected by her mastectomy. (Tr. 471.) In September 2015, following imaging, Dr. Gheith found that Burgess' complaints of pain around the bra line were most likely caused by degeneration in the mid thoracic region of her spine. (Tr. 741.) In December 2013, Burgess complained of "generalized pains, especially in her back," which she attributed to fibromyalgia. (Tr. 323.) Burgess' plastic surgeon found that there was nothing wrong with Burgess' implants, and that Burgess' complaints of breast pain and discomfort were caused by the size of the implants she had requested. (Tr. 1268.)

Even if the ALJ should have noted Burgess' diagnoses of breast cancer, post-mastectomy pain syndrome, or chronic pain syndrome as severe, his failure to do so would not be sufficient cause for remand because it is the functional limitations imposed by a severe impairment that are dispositive, not the fact of diagnosis. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 731 (8th Cir. 2003) ("[T]he dispositive question remains whether [Plaintiff's] functioning in various areas is markedly impaired, not what one doctor or another labels his disorder."). As long as the ALJ found one significant impairment at step two, and moved on to consider whatever effects Burgess' cancer, post-mastectomy pain syndrome, and chronic pain syndrome might have imposed at steps three and four, then the alleged error is harmless.

The ALJ found that Burgess' spine disorder and fibromyalgia were severe impairments. (Tr. 14.) He stated that Burgess' fibromyalgia "causes her generalized pain." (Tr. 19.) As a

result of these impairments, the ALJ limited Burgess to a limited range of light work.   As discussed above, Burgess' sporadic complaints of post-mastectomy pain have been attributed to her spinal impairment and to her fibromyalgia.   Thus, her complaints of generalized pain and chest pain were ultimately considered in determining her functional limitations.

Burgess also argues that, because the ALJ did not find Burgess' cancer was a severe impairment, he did not consider the effect of her cancer diagnosis on her mental impairments.  This argument lacks merit.   The ALJ found that Burgess' affective disorder and anxiety disorder were severe impairments, and proceeded to assess mental limitations as a result.   (Tr. 14.)   In doing so, the ALJ discussed the June 2014 psychological evaluation of David Peaco, Ph.D.   (Tr. 17, 19.)   Dr. Peaco specifically noted Burgess' history of breast cancer and her treatment for such.  (Tr. 466-68.)   The ALJ indicated that he was assigning "great weight" to Dr. Peaco's opinions.  (Tr. 20.)   Thus, the ALJ adequately analyzed Burgess' mental impairments at step two.

**B.     RFC Determination**

Burgess next argues that the ALJ failed to properly consider her RFC.   Specifically, Burgess contends that, if the ALJ had properly considered her impairments at step two, he "would have been forced to find Plaintiff was limited to no more than sedentary work."   (Doc. 17 at 9.)

The Court has already found that the ALJ did not commit reversible error at step two.   The Court now considers whether the RFC formulated by the ALJ is supported by substantial evidence.

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations.   *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).   Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question.   *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.

2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

On July 9, 2014, state agency physician Kenneth Smith, M.D., expressed the opinion that Burgess could frequently lift ten pounds, and occasionally lift twenty pounds; stand or walk a total of six hours in an eight-hour workday; sit for a total of more than six hours in an eight-hour workday; push or pull an unlimited amount; and should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 69-70.) In his written explanation of his decision, Dr. Smith cited Burgess' breast cancer, status post bilateral mastectomies and implants; as well as her fibromyalgia, obesity, COPD, and spinal impairment. *Id.* He also noted Burgess' complaints of "stiffness and aching to upper parts of chest where surgeries were." (Tr. 70.)

The ALJ indicated that he was assigning "great weight" to Dr. Smith's opinion because it is supported by and consistent with the evidence, including Burgess' objective imaging studies. (Tr. 20.) He further explained that Dr. Smith is a medical expert who is familiar with Social Security law, and that Dr. Smith provided a narrative explanation in support of his opinion. *Id. See* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence).

The ALJ discussed imaging of the spine, which revealed slightly decreased L5-S1

intervertebral space height, mild anterior wedging of T7-9 consistent with minimal chronic changes, and degenerative changes throughout the spine, but no evidence of spinal canal stenosis and no neural foraminal narrowing. (Tr. 18, 1090, 1103, 744, 738.) The ALJ stated that Dr. Gheith has described Burgess' gait as slow but with no difficulty, and has found she has normal muscle strength and tone. (Tr. 748.) He acknowledged that Burgess takes pain medication, but pointed out that she has not participated in recommended physical therapy. (Tr. 19.) The ALJ also considered the fact that none of Burgess' treating or examining physicians has suggested she has disabling limitations. (Tr. 20.)

As to Burgess' mental RFC, the ALJ considered the opinion of consultative psychologist Dr. Peaco. Burgess saw Dr. Peaco on June 10, 2014, at which time he diagnosed her with bipolar disorder and generalized anxiety disorder, with a GAF score of 60.[3] (Tr. 468.) Dr. Peaco expressed the opinion that Burgess is able to understand and remember simple instructions, her persistence in completing tasks is mildly impaired, her concentration is moderately impaired, her social functioning is mildly impaired, and her capacity to function effectively in and cope with the world around her is moderately impaired due to her depression, manic symptoms, and anxiety. (Tr. 468.) Additionally, state agency psychologist Martin Isenberg, Ph.D., found that Burgess is mildly restricted in activities of daily living, has mild difficulties maintaining social functioning, and has moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 81.)

The ALJ accorded "great weight" to these opinions, finding that they are supported by and consistent with the evidence, including Burgess' lack of mental health specialist treatment during

---

[3] A GAF score of 51 to 60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("*DSM IV–TR*").

the majority of the period at issue.  (Tr. 20.)  As a result, he limited her to simple, routine, repetitive work in a low-stress environment, with only occasional interaction with supervisors, co-workers, and the public.  (Tr. 17.)

The Court finds that the RFC formulated by the ALJ is supported by substantial evidence on the record as a whole.  It is supported by the opinions of Drs. Smith, Peaco, and Isenberg.  The RFC is also consistent with the imaging studies and treatment notes of examining providers, which reveal minimal findings.  The ALJ adequately took into account Burgess' pain resulting from her multiple impairments when limiting her to a reduced range of light work.  Burgess has failed to establish the presence of any greater limitations than those found by the ALJ.  Thus, the ALJ did not err in determining Burgess' RFC.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni  
ABBIE CRITES-LEONI  
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of September, 2018.